IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELZA PITTMAN, | No. CIV S-08-2413-FCD-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| ALVARO C. TRAQUINA, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the original complaint as against defendants Traquina, Tan, Rohrer, Mahon, Lahey, Basi, and Popson.[1] Pending before the court are separate

---

[1] In the complaint, plaintiff refers to both "Lahey" and "Layen." At the time the court initially screened the complaint, it was unclear whether plaintiff intended this to refer to separate defendants or whether these were references to the same individual. Because the complaint appeared to state a claim as against Lahey and not with respect to Layen, plaintiff was provided an opportunity to clarify this point, but did not do so. Thus, the court issued an order dismissing Layen as a separately named defendant. Service directed to defendant Popson was returned unexecuted.

1

unopposed motions for summary judgment (Docs. 25 and 34) filed by defendants Traquina, Tan, Rohrer, Mahon, Lahey, and Basi.

## I. PLAINTIFF'S CLAIMS

Plaintiff alleges deliberate indifference to a serious medical condition and seeks declaratory, injunctive, and monetary relief. Plaintiff's factual allegations are outlined below.

<u>Tan</u> – Plaintiff was seen by defendant Tan on September 14, 2005. Defendant Tan failed to perform an examination but prescribed medication to treat plaintiff's condition. Plaintiff was seen again by defendant Tan on November 13, 2007, at which time plaintiff reported on his continuing medical problem. Plaintiff states that defendant Tan did nothing except prescribe the same medication. Plaintiff also states that he was seen by defendants Tan and Basi "[f]rom January 2008 through April 2008" and that neither defendant ever performed an examination and that they continued to prescribe the same ineffective medication.

<u>Mahon</u> – Plaintiff was seen by defendant Mahon on March 6, 2006, after his medical condition had worsened. Defendant Mahon failed to perform an examination but prescribed medication to treat plaintiff's worsened condition. After plaintiff's condition continued to worsen, he was seen by defendant Mahon again on September 8, 2006, at which time plaintiff stated that the current medication was not working. Again, defendant Mahon did not perform any examination but prescribed the same medication. Plaintiff was seen by defendant Mahon again on November 15, 2006. Plaintiff told defendant Mahon that the prescribed medication was ineffective. Once again, defendant Mahon did not perform any examination and prescribed the same medication.

<u>Basi</u> – Plaintiff was seen by defendant Basi on February 2, 2007. Despite plaintiff telling defendant Basi that the current medication was not working, defendant Basi did not perform any examination and prescribed the same medications. After plaintiff had submitted an inmate grievance concerning his medical treatment, he was seen again by defendant Basi on April 24, 2007. Plaintiff asserts that, once again, defendant Basi did not perform any examination but merely prescribed the same medication. Plaintiff also states that he was seen by defendants Tan and Basi "[f]rom January 2008 through April 2008" and that neither defendant ever performed an examination and that they continued to prescribe the same ineffective medication.

<u>Lahey</u> – On March 9, 2007, defendant Lahey informally responded to plaintiff's inmate grievance concerning his medical treatment. Plaintiff states that defendant Lahey "ignored plaintiff's request for treatment . . . and solely responded to the unrelated medication issue."

<u>Popson</u> – Plaintiff was seen by defendant Popson on May 24, 2007, who did not perform any examination but prescribed the same medication.

<u>Traquina</u> – Defendant Traquina prepared a second level response to plaintiff's inmate grievance on June 22, 2007.  Plaintiff states that, other than ordering the same medication, "defendant Traquina failed to order an examination. . . ."

<u>Rohrer</u> – Plaintiff was seen by defendant Rohrer on July 16, 2007, regarding the existing problem and a new medical condition.  Defendant Rohrer performed an examination and prescribed the same medication.

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen

1  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
2  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
3  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
4  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
5  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

In their motions for summary judgment, defendants Tan, Rohrer, Mahon, Basi, and Lahey argue that the evidence establishes that plaintiff received constitutionally adequate medical care for a non-serious medical condition.  In their separate motion, defendants Tan, Rohrer, Mahon, and Lahey argue that they acted reasonably and, therefore, are entitled to qualified immunity.  In addition to these arguments, the court will also address plaintiff's failure to effect timely service on defendant Popson.

**A.  Eighth Amendment**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

1  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison
2  official must have a "sufficiently culpable mind."  See id.
3        Deliberate indifference to a prisoner's serious illness or injury, or risks of serious
4  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at
5  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental
6  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is
7  sufficiently serious if the failure to treat a prisoner's condition could result in further significant
8  injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d
9  1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).
10 Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition
11 is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily
12 activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See
13 Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).
14       The requirement of deliberate indifference is less stringent in medical needs cases
15 than in other Eighth Amendment contexts because the responsibility to provide inmates with
16 medical care does not generally conflict with competing penological concerns.  See McGuckin,
17 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to
18 decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.
19 1989).  The complete denial of medical attention may constitute deliberate indifference.  See
20 Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical
21 treatment, or interference with medical treatment, may also constitute deliberate indifference.
22 See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also
23 demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.
24       Negligence in diagnosing or treating a medical condition does not, however, give
25 rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a
26 difference of opinion between the prisoner and medical providers concerning the appropriate

course of treatment does not give rise to an Eighth Amendment claim. See <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).

All defendants argue that plaintiff's medical condition was not sufficiently serious to trigger Eighth Amendment scrutiny. In his motion, defendant Basi argues:

> Hemorrhoids are a relatively common medical condition, often caused by straining to pass hard stool. (UMF No. 1 and 3). The symptoms of hemorrhoids include itching, pain or discomfort, and bleeding with bowel movements. (UMF No. 4). In most cases, the symptoms of hemorrhoids resolve spontaneously, but in some patients the symptoms can persist for years. (UMF No. 8).
> In the vast majority of cases, hemorrhoids are not dangerous or life-threatening. (UMF No. 7). Only if bleeding and anemia are quite severe can hemorrhoids post a risk of serious injury or death. (UMF No. 6 and 7). Plaintiff's blood counts were consistently within normal limits, and his tests for occult blood in the stool were always negative. (UMF No. 50). Therefore, Plaintiff never had significant bleeding. What's more, examination and diagnostic testing revealed that he did not have the type of hemorrhoid which can produce severe pain with rectal bleeding: a thrombosed external hemorrhoid. (UMF no. 51). Colonoscopy proved that he had internal hemorrhoids, for which surgical treatment was not recommended. (UMF No. 43). Therefore, Plaintiff's hemorrhoids were not a serious medical condition as that term has been defined by case law.

The other moving defendants' argument is similar. Defendants conclude that, if plaintiff did not suffer a serious medical condition, it is impossible as a matter of law for them to have been deliberately indifferent to such a condition.

The court finds that defendants' argument is supported by the undisputed evidence. Specifically, defendants have submitted their own expert declarations, along with portions of plaintiff's medical records, establishing that: (1) plaintiff did not suffer the kind of hemorrhoid condition which could cause severe pain; (2) there was no evidence of rectal bleeding; (3) plaintiff's blood counts remained within normal limits; and (4) plaintiff was provided routine conservative treatment. Plaintiff has not presented any contrary evidence.

Even if plaintiff suffered from a sufficiently serious medical condition, the evidence also indicates that plaintiff was provided medical treatment. This is not a case of a total failure to respond to plaintiff's medical complaints. Rather, it is a case where plaintiff's

complaints were addressed, though not in a manner he would have wished. As stated above, disagreement as to appropriate treatment cannot give rise to a claim under the Eighth Amendment.

### B. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the

court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

As stated above, unless defendants violated a clearly established right which a reasonable person would know, they are entitled to qualified immunity. Here, the court finds that there was no violation of a constitutional right because plaintiff's hemorrhoids were not a sufficiently serious medical condition to trigger Eighth Amendment protections. Therefore, defendants are entitled to qualified immunity for their conduct in responding to plaintiff's relatively minor hemorrhoid condition.

**C.    Defendant Popson**

On January 15, 2009, the court directed the United States Marshal to effect service on defendant Popson based on information provided by plaintiff. Service was returned unexecuted on October 2, 2009, accompanied by the notation: "Not employed; unable to locate." On December 7, 2009, the court directed plaintiff to provide the court with further information sufficient to locate and serve defendant Popson. Plaintiff was warned that failure to effect service in a timely manner could result in dismissal of defendant Popson pursuant to Federal

Rule of Civil Procedure 4(m).

Plaintiff filed a response to the order on January 29, 2010, in which he outlines his efforts to obtain additional information for defendant Popson. Specifically, plaintiff states that he requested further information from prison officials, who responded:

> The only information this office has available is that Dr. Popson was employed with this department during 2007 was a contracted employee with Registry of Physician Specialists with telephone number of (925) 974-1731. We do not retain the address of this registry, however, it is probably available through resources in the library.

Plaintiff states that the prison library had no such resources and would not let him consult a phone book. Plaintiff does not state whether he, or someone acting on his behalf, attempted to contact defendant Popson via the telephone number provided by prison officials. Nor does plaintiff outline any other efforts made to locate defendant Popson, such as discovery directed to other defendants.

The court finds that plaintiff has not shown good cause for his failure to effect timely service on defendant Popson, who should be dismissed from the action.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' unopposed motions for summary judgment (Docs. 25 and 34) be granted;

2. Defendant Popson be dismissed; and

3. The Clerk of the Court enter judgment in favor of defendants and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's

1 Findings and Recommendations." Failure to file objections within the specified time may waive
2 the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 DATED: March 3, 2010

```
                                          /s/ Craig M. Kellison
                                          _____
                                          CRAIG M. KELLISON
                                          UNITED STATES MAGISTRATE JUDGE
```